

1 | BRENT NEWELL (SBN 210312)
LUKE W. COLE (SBN 145505)
2 | CENTER ON RACE, POVERTY & THE ENVIRONMENT
47 Kearny Street, Suite 804
3 | San Francisco, CA 94108
Telephone:    (415) 346-4179
4 | Fax:            (415) 346-8723
Email:        bjnewell@igc.org
5 |
Attorneys for Plaintiff
6 | Association of Irritated Residents

7 | DAVID PETTIT (SBN 067128)
MELISSA LIN PERRELLA (SBN 205019)
8 | ADRIANO MARTINEZ (SBN 237152)
NATURAL RESOURCES DEFENSE COUNCIL
9 | 1314 Second Street
Santa Monica, CA  90401
10 | Telephone:    (310) 434-2300
Facsimile:    (310) 434-2399
11 | Email:        amartinez@nrdc.org

12 | Attorneys for Plaintiff
Natural Resources Defense Council, Inc.
13 |

14 | **UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
15 | **SAN FRANCISCO DIVISION**

16 | ASSOCIATION OF IRRITATED RESIDENTS, | **COMPLAINT FOR DECLARATORY**
17 | an unincorporated association, and NATURAL | **AND INJUNCTIVE RELIEF**
RESOURCES DEFENSE COUNCIL, INC.,
18 |            Plaintiffs,
19 |    v.
20 | UNITED STATES ENVIRONMENTAL
21 | PROTECTION AGENCY, STEPHEN L.
JOHNSON, in his official capacity as
22 | Administrator of the United States
Environmental Protection Agency, and WAYNE
23 | NASTRI, in his official capacity as Regional
Administrator for Region IX of the United States
24 | Environmental Protection Agency,

25 |            Defendants.

26 |

27 |

28 |

COMPLAINT

ORIGINAL FILED

JAN 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SC

CV 08    0227

**INTRODUCTION**

1. Several regions of California have some of the most intractable air quality problems in the country, including the South Coast Air Basin and the San Joaquin Valley. The backbone for improving air quality in these regions is the State Implementation Plan ("SIP").

2. Plaintiffs Association of Irritated Residents and the Natural Resources Defense Council (collectively "AIR") bring this Clean Air Act ("CAA") citizen enforcement action to compel the U.S. Environmental Protection Agency ("EPA") to undertake several long-overdue, non-discretionary duties to set the South Coast Air Basin, San Joaquin Valley, and State of California on a path towards reducing dangerous levels of air pollution to achieve healthy air.

3. The CAA is a model of cooperative federalism, whereby the EPA sets health-based National Ambient Air Quality Standards ("NAAQS") and individual states develop the plans to achieve those standards. States submit these plans to EPA, which reviews the plans to ensure the plans meet the minimum requirements of the CAA. If satisfactory, then EPA approves the plans or plan revisions as part of the SIP. If the plans do not meet the CAA's minimum requirements, then EPA must disapprove the plans, triggering mandatory sanctions and an EPA-promulgated plan if the state does not correct the deficiencies within 18 months. 42 U.S.C. § 7509(a)-(b).

4. Specifically, the CAA requires EPA to have acted by deadlines long past due to approve or disapprove several proposed revisions to the California SIP. These revisions include the 2003 State and Federal Strategy for the California State Implementation Plan to attain the 1-hour ozone and PM10 NAAQS ("2003 State SIP"), the 2004 San Joaquin Valley Extreme Ozone Attainment Demonstration Plan ("2004 Valley SIP"), and the 2003 Air Quality Management Plan for the South Coast Air Quality Management District ("2003 South Coast SIP").

5. Had EPA approved these plan revisions on time, EPA and citizens would already be able to enforce the strategies in these plans to ensure that several areas in California attain health-based NAAQS by the deadlines in the CAA. Had EPA disapproved the plan revisions as

COMPLAINT                                                                                           Page 1

1    inconsistent with the CAA, California would have already made changes to ensure that the

2    plans meet the minimum requirements of the CAA.

3        6.  Instead, EPA has failed to act on these plan revisions, ignoring EPA's role to ensure that

4    California's plans attain NAAQS and accordingly comply with the CAA.

## JURISDICTION

6        7.  This Court has jurisdiction over this action to compel the performance of non-

7    discretionary duties by EPA pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the

8    CAA) and 28 U.S.C. § 1331 (federal question jurisdiction).

9        8.  The relief AIR requests is authorized by 28 U.S.C. §§ 2201(a) and 2202, and 42 U.S.C. §

10   7604.

11       9.  On October 9, 2007, AIR provided EPA written notice of the claims stated in this action

12   at least sixty days before commencing this action, as required by CAA § 304(b)(2), 42 U.S.C. §

13   7604(b)(2), and 40 C.F.R. §§ 54.2 and 54.3.  A copy of the notice letter, sent by certified mail,

14   return receipt requested, is attached as Exhibit 1.  Although more than 60 days have elapsed

15   since AIR gave notice, EPA remains in violation of the CAA.

## VENUE

17       10. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1),

18   because the EPA Administrator for Region IX is located in San Francisco County, and pursuant

19   to 28 U.S.C. § 1391(e)(2), because EPA's alleged inactions relate to the duties of the EPA

20   Regional Administrator in San Francisco.

## INTRADISTRICT ASSIGNMENT

22       11. Similarly, because the omissions alleged in this Complaint relate to the duties of the

23   Regional Administrator, assignment to the San Francisco Division of this Court is proper under

24   Civil L.R. 3-2(c)-(d).

## PARTIES

26       12. Plaintiff ASSOCIATION OF IRRITATED RESIDENTS is an unincorporated

27   association that advocates for air quality and environmental health in the San Joaquin Valley.

28

COMPLAINT                                                                      Page 2

1    Members of ASSOCIATION OF IRRITATED RESIDENTS reside in Fresno, Kern, Kings,

2    Stanislaus, and Tulare counties in the San Joaquin Valley air basin.

3        13. Plaintiff NATURAL RESOURCES DEFENSE, INC. ("NRDC") is a national, non-profit

4    organization with two offices in California, and over 421,000 members dedicated to the

5    protection of the environment, more than 79,000 of whom live in California. Through

6    education, advocacy, litigation and other efforts, NRDC works to protect the environment, and

7    its members from environmental threats, including threats from poor air quality.

8        14. ASSOCIATION OF IRRITATED RESIDENTS and NATURAL RESOURCES

9    DEFENSE COUNCIL are "persons" within the meaning of section 302(e) of the CAA, 42

10    U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C.

11    § 7604(a).

12        15. Members of plaintiff organizations live, raise their families, work (including treating

13    patients suffering adverse health effects from air pollution), recreate and conduct educational,

14    research, advocacy and other activities in the State of California. They are adversely affected

15    by exposure to levels of air pollution that exceed the health-based ozone and particulate matter

16    NAAQS. The adverse effects of such pollution include actual or threatened harm to their

17    health, their families' health, their patients' health, their professional, educational and economic

18    interests and their aesthetic and recreational enjoyment of the environment in the State of

19    California.

20        16. The CAA violations alleged in this Complaint also deprive members of plaintiff

21    organizations of certain procedural rights associated with EPA's required action on the 2003

22    State SIP, the 2004 Valley SIP, and the 2003 South Coast SIP, including notice and opportunity

23    to comment.

24        17. The CAA violations alleged in this Complaint have injured and continue to injure the

25    interests of the plaintiff organizations and their members. Granting the relief requested in this

26    lawsuit would redress these injuries by compelling EPA action that Congress determined to be

27

28

COMPLAINT                                                                    Page 3

1 | an integral part of the regulatory scheme for improving air quality in areas violating NAAQS,

2 | such as the South Coast Air Basin and the San Joaquin Valley.

3 |    18.  Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the

4 | federal agency charged with implementation and enforcement of the CAA.  As described below,

5 | the CAA assigns to EPA certain non-discretionary duties.

6 |    19.  Defendant STEPHEN L. JOHNSON is sued in his official capacity as the Administrator

7 | of the EPA.  He is charged in that role with taking various actions to implement and enforce the

8 | CAA, including the actions sought in this Complaint.

9 |    20.  Defendant WAYNE NASTRI is sued in his official capacity as EPA Regional

10 | Administrator for Region IX.  He is responsible for implementing and enforcing the CAA in

11 | Region IX, which includes the South Coast Air Basin and the San Joaquin Valley.

12 | **STATUTORY FRAMEWORK**

13 |    21. The CAA establishes a partnership between EPA and the states for the attainment and

14 | maintenance of national air quality goals. *See* 42 U.S.C. §§ 7401-7515.  Under the CAA, EPA

15 | has set health-based primary NAAQS for six pollutants. *See* 40 C.F.R. part 50.4-50.13.  States,

16 | or region within a state, must adopt a pollution control plan that contains enforceable emissions

17 | limitations necessary to attain the NAAQS and meet applicable requirements of the CAA,

18 | including ensuring attainment, maintenance, and enforcement of the NAAQS.  42 U.S.C. §§

19 | 7410(a)(1), (a)(2)(A); 7502(c)(6).  All such plans must be submitted to, and approved by EPA.

20 | 42 U.S.C. § 7410(a)(1), (k).

21 |    22.  EPA has established NAAQS for the one-hour ozone standard.  40 C.F.R. § 50.9(a).

22 |    23.  EPA has established NAAQS for the eight-hour ozone standard.  40 C.F.R. § 50.10(a).

23 |    24.  EPA promulgated a rule to implement the transition from the one-hour to the eight-hour

24 | ozone NAAQS.  The rule requires that "mandatory control measures" to attain the one-hour

25 | standard remain in place to attain the eight-hour standard and that "discretionary control

26 | measures" remain in place unless a State can show "removal or modification will not interfere

27 | with attainment of or progress toward the 8-hour ozone NAAQS (or any other applicable

28 |

COMPLAINT                                                                                                        Page 4

1  requirement of the CAA)." 69 Fed. Reg. 23951, 23954 (Apr. 15, 2004). The D.C. Circuit Court

2  of Appeals upheld certain portions of the rule, specifically affirming EPA's decision to retain

3  the mandatory control measures to attain the one-hour standard, but concluded that EPA's

4  decision to remove "one hour penalties, rate-or-progress milestones, contingency plans, and

5  motor vehicle emissions budgets" and New Source Review violated the CAA. *See South Coast*

6  *Air Quality Management District v. United States Environmental Protection Agency*, 472 F.3d

7  882, 900 (D.C. Cir. 2006).

8       25. EPA has established both a 24-hour and an annual NAAQS for PM10, 40 C.F.R. §

9  50.6(a) & (b), but it has revoked the annual PM-10 standard. 71 Fed. Reg. 61144 (Oct. 17,

10  2006).

11       26. The 1990 Amendments classify PM-10 and ozone nonattainment areas based on the

12  severity of the air quality problems in each area. The possible PM-10 classifications are (in

13  order of increasing severity): moderate or serious. 42 U.S.C. § 7513(a),(b). The possible

14  classifications for ozone nonattainment areas are (in order of increasing severity): marginal,

15  moderate, serious, severe, and extreme. 42 U.S.C. § 7511a. The CAA establishes attainment

16  deadlines for both PM-10 and ozone nonattainment areas according to the area's attainment

17  status. *Id.*; 42 U.S.C. § 7513.

18       27. Within sixty days of EPA's receipt of a proposed SIP revision, the CAA requires EPA to

19  determine whether the submission is sufficient to meet the minimum criteria established by

20  EPA for such proposals. 42 U.S.C. § 7410(k)(1)(B). If EPA fails to make such a

21  "completeness" finding, the proposed SIP revision is complete by operation of law six months

22  after submission. *Id.* If EPA determines that the proposed SIP revision does not meet the

23  minimum criteria, the state is considered not to have made the submission. 42 U.S.C. §

24  7410(k)(1)(C).

25       28. Within twelve months of finding that a proposed SIP revision is complete (or deemed

26  complete by operation of law), EPA must act to approve, disapprove, or approve in part and

27  disapprove in part, the submission. 42 U.S.C. § 7410(k)(2).

28

COMPLAINT                                                                    Page 5

29. If EPA disapproves the revision, then the CAA requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the State submits revisions within 18 months. 42 U.S.C. § 7509(a),(b). EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency. *Id.* Moreover, the CAA requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state has corrected the deficiency and EPA has approved the revision. 42 U.S.C. § 7410(c).

30. Once EPA approves a SIP or SIP revision, the region must comply with any and all emission standards and limitations contained in the SIP, and all such standards and limitations become federal law and are enforceable by EPA and citizens in federal courts. 42 U.S.C. §§ 7413; 42 U.S.C. § 7604(a),.(f).

31. If EPA fails to comply with a non-discretionary duty, such as acting on a proposed SIP revision within the CAA deadlines, the CAA allows citizens to bring suit to compel EPA to perform its duty. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

### Ozone and Particulate Matter Pollution in California

32. Ground-level ozone is formed by a photochemical reaction between oxides of nitrogen (called NOx) and hydrocarbons (sometimes referred to as Volatile Organic Compounds or "VOCs") in the lower atmosphere. Unlike ozone in the upper atmosphere, which is formed naturally and shields the earth from harmful levels of ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution and has a variety of adverse effects on vegetation, crops, and materials, in addition to its impacts on human health.

33. The health effects of ozone at levels even below the national ozone standard include the exacerbation of asthma and emphysema, and includes adverse effects on children and the elderly. Persons with respiratory illnesses, children who are active in outdoor activities, and adults who

COMPLAINT                                                                                        Page 6

1  engage in heavy manual labor or exercise vigorously are particularly vulnerable to adverse health

2  effects from ozone exposure.

3     34. Ozone is toxic to plants, reducing crop yields and damaging trees.

4     35. The 2003 State and Federal Strategy for the California State Implementation Plan to

5  attain the 1-hour ozone and PM10 NAAQS ("2003 State SIP") made a series of new State

6  commitments to reduce the amount of ozone-forming and particulate matter pollution necessary

7  to attain the ozone and PM10 NAAQS.  It also described feasible approaches to reduce emissions

8  from sources under the jurisdiction of the federal government.  On October 23, 2003, the

9  California Air Resources Board ("CARB") adopted the 2003 State SIP.

10    36. The 2004 San Joaquin Valley Extreme Ozone Attainment Demonstration Plan ("2004

11 Valley SIP") identified strategies and made commitments necessary to attain the one-hour ozone

12 NAAQS.  The San Joaquin Valley Unified Air Pollution Control District adopted the plan on

13 October 8, 2004.  ARB approved the 2004 Valley SIP on October 28, 2004.

14    37. The  2003 Air Quality Management Plan for the South Coast Air Quality Management

15 District ("2003 South Coast SIP") revised the previous ozone and PM10 plans for the South

16 Coast Air Basin.  The 2003 South Coast SIP revised the emission inventory and attainment

17 demonstration, and included additional control measures or commitments to adopt control

18 measures necessary to attain the ozone and PM10 NAAQS.  The South Coast Air Quality

19 Management District ("SCAQMD") approved the 2003 South Coast SIP on August 1, 2003.

20 ARB approved the 2003 South Coast SIP on October 23, 2003.

**FIRST CAUSE OF ACTION**

**FAILURE TO PERFORM A NON-DISCRETIONARY DUTY TO ACT ON**

**THE 2003 STATE SIP**

**(42 U.S.C. § 7604(a)(2))**

25    38. AIR re-alleges and incorporates by reference the allegations set forth in paragraphs 1

26 to 37.

27    39.  CARB submitted the 2003 State SIP to EPA on January 9, 2004.

28

40. On or about January 9, 2004, EPA received the 2003 State SIP.

41. By operation of law, the 2003 State SIP was deemed complete on or about July 9, 2004, when EPA failed to make a completeness finding. 42 U.S.C. § 7410(k)(1)(B). The CAA requires EPA to act on (*i.e.* approve, disapprove, or approve in part and disapprove in part) the 2003 State SIP within 12 months of the date of the completeness finding. 42 U.S.C. § 7410(k)(2). Thus, the deadline for EPA to act on the 2003 State SIP was on or about July 9, 2005.

42. EPA has failed to take any action on the 2003 State SIP.

43. Accordingly, EPA has violated and continues to violate CAA § 110(k)(2), 42 U.S.C. § 7410(k)(2), since July 9, 2005.

44. This CAA violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," within the meaning of the CAA's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation is ongoing and will continue unless remedied by this Court.

## SECOND CAUSE OF ACTION

## FAILURE TO PERFORM A NON-DISCRETIONARY DUTY TO ACT ON

## THE 2004 VALLEY SIP

## (42 U.S.C. § 7604(a)(2))

45. The AIR re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 44.

46. On November 15, 2004, CARB submitted the 2004 Valley SIP to EPA.

47. On or about November 15, 2004, EPA received the 2004 Valley SIP.

48. By operation of law, the 2004 Valley SIP was deemed complete on or about May 15, 2005, when EPA failed to make a completeness finding. 42. U.S.C. § 7410(k)(1)(B). The CAA requires EPA to act on (*i.e.* approve, disapprove, or approve in part and disapprove in part) the 2004 Valley SIP within 12 months of the date of the completeness finding. 42 U.S.C. § 7410(k). Thus, the deadline for EPA to act on the 2004 Valley SIP was on or about May 15, 2006.

COMPLAINT                                                                                      Page 8

49. EPA has failed to take any action on the 2004 Valley SIP.

50. Accordingly, EPA has violated and continues to violate CAA § 110(k)(2), 42 U.S.C. § 7410(k)(2), since May 15, 2006.

51. This CAA violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," within the meaning of CAA's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation is ongoing and will continue unless remedied by this Court.

## THIRD CAUSE OF ACTION

## FAILURE TO PERFORM A NON-DISCRETIONARY DUTY TO ACT ON

## THE 2003 SOUTH COAST SIP

## (42 U.S.C. § 7604(a)(2))

52. The AIR re-alleges and incorporates by reference the allegations set forth in paragraphs 1 to 51.

53. On January 9, 2004, CARB submitted the 2003 South Coast SIP to EPA.

54. On or about January 9, 2004, EPA received the 2003 South Coast SIP.

55. On February 18, 2004, EPA determined that the 2003 South Coast SIP was complete pursuant to 42 U.S.C. § 110(k)(1)(B) and 40 CFR part 51, Appendix V. 70 Fed. Reg. 43663, 43665 (July 28, 2005).

56. The CAA requires EPA to act on (*i.e.* approve, disapprove, or approve in part and disapprove in part) the 2003 South Coast SIP within 12 months of the date of the completeness finding. 42 U.S.C. § 7410(k). Thus, the deadline for EPA to act on the 2003 South Coast SIP was February 18, 2005.

57. On November 14, 2005, EPA approved the plan as it pertained to attainment of the 24-hour and annual NAAQS for PM10 and revisions to SCAQMD rules 403, 403.1, and 1186, which pertained to fugitive dust emissions. To date, EPA has failed to act on the other portions of the 2003 South Coast SIP, which violates EPA's nondiscretionary duty to act pursuant to section 110(k)(2) of the CAA, 42 U.S.C. §7410(k)(2).

COMPLAINT

1    58. Accordingly, EPA has violated and continues to violate CAA § 110(k)(2), 42 U.S.C. §

2    7410(k)(2), since on or about February 18, 2005.

3    59. This CAA violation constitutes a "failure of the Administrator to perform any act or duty

4    under this chapter which is not discretionary with the Administrator," within the meaning of

5    CAA's citizen suit provision.  42 U.S.C. § 7604(a)(2).  EPA's violation is ongoing and will

6    continue unless remedied by this Court.

7                                        **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

9        1.  DECLARE

10                    A.  That EPA violated the CAA by failing to take final action on the 2003

11                        State SIP;

12                    B.  That EPA violated the CAA by failing to take final action on the 2004

13                        Valley SIP;

14                    C.  That EPA violated the CAA by failing to take final action on the 2003

15                        South Coast SIP;

16       2.  ISSUE preliminary and permanent injunctions directing EPA to finalize action on the

17           2003 State SIP, the 2004 Valley SIP, and the 2003 South Coast SIP;

18       3.  RETAIN jurisdiction over this matter until such time as EPA has complied with its non-

19           discretionary duties under the CAA;

20       4.  AWARD to plaintiffs their costs of litigation, including reasonable attorney and expert

21           witness fees; and

22       5.  GRANT such additional relief as the Court may deem just and proper.

23

24    Respectfully submitted on this 14th day of January 2007.

25

26

27

28

COMPLAINT                                                                    Page 10

CENTER ON RACE, POVERTY & THE ENVIRONMENT


Brent Newell
Attorney for Plaintiff
Association of Irritated Residents

NATURAL RESOURCES DEFENSE COUNCIL, INC.


David Pettit
Adrian Martinez
Attorneys for Plaintiff
Natural Resources Defense Council, Inc.
Attorneys for Plaintiff
Natural Resources Defense Council, Inc.

COMPLAINT

Page 11

# CENTER ON RACE, POVERTY & THE ENVIRONMENT

47 KEARNY STREET, SUITE 804
SAN FRANCISCO, CA 94108

415/346-4179  •  FAX 415/346-8723

BJNEWELL@IGC.ORG

RALPH SANTIAGO ABASCAL (1934-1997)
DIRECTOR 1990-1997

LUKE W. COLE
EXECUTIVE DIRECTOR

CAROLINE FARRELL
DIRECTING ATTORNEY, DELANO

LUPE MARTINEZ
DIRECTOR OF ORGANIZING

GUSTAVO AGUIRRE
ASSOCIATE DIRECTOR OF ORGANIZING

DANIELA SIMUNOVIC
ORGANIZER

INGRID BROSTROM • AVINASH KAR  •  BRENT NEWELL
STAFF ATTORNEYS

MARYBELLE NZEGWU
CIVIL RIGHTS FELLOW

October 9, 2007

*By Certified Mail, Return Receipt Requested*

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, CA, 94105

Re:    Notice of Intent to Sue for Failure to Take Action on (1) the 2003 State and Federal
       Strategy for the California State Implementation Plan; and (2) the 2004 San Joaquin
       Valley Extreme Ozone Attainment Demonstration Plan; and (3) the 2003 Air Quality
       Management Plan for the South Coast Air Quality Management District

Dear Messrs. Johnson and Nastri:

    The Association of Irritated Residents ("AIR") and Natural Resources Defense Council
("NRDC") gives notice to the Environmental Protection Agency ("EPA") of AIR and NRDC's
intent to sue the EPA for its failure to fulfill its mandatory duty to take final action to approve or
disapprove (1) the 2003 State and Federal Strategy for the California State Implementation Plan
("2003 State SIP"); (2) the 2004 San Joaquin Valley Extreme Ozone Attainment Demonstration
Plan ("2004 Valley SIP"); and (3) the 2003 Air Quality Management Plan for the South Coast Air

Messrs. Stephen L. Johnson and Wayne Natri
Notice of Intent to Sue
October 9, 2007


Quality Management District ("2003 South Coast SIP").

Pursuant to § 304 (b) of the Clean Air Act ("Act"), 42 U.S.C. § 7604(b), and 40 C.F.R. §§ 54.2 and §§ 54.3, AIR and NRDC give the EPA Administrator and the Regional Administrator for EPA Region IX notice of AIR and NRDC's intent to sue EPA for its failure to perform non-discretionary duties under the Act.

Section 110(k)(1)(B) of the Act, 42 U.S.C. § 7410(k)(1)(B), requires that EPA *shall* make a completeness finding within 60 days of the date that EPA receives a plan or plan revision. A Plan or plan revision shall be deemed complete by operation of law if EPA fails to make a completeness finding within 6 months of the date that EPA receives a plan or plan revision. 42 U.S.C. § 7410(k)(1)(B). EPA shall act on a state's submission, by full or partial approval or disapproval, within twelve months of a completeness finding. 42 U.S.C. § 7410(k)(2).

EPA rescinded the 1-hour ozone standard effective one year from the effective date of the 8-hour National Ambient Air Quality Standard ("NAAQS") designation. 69 Fed. Reg. 23951, 23969 (April 30, 2004); 69 Fed. Reg. 23858 (April 30, 2004). Even though EPA has rescinded the 1-hour ozone NAAQS, the discretionary and mandatory controls applicable 1-hour ozone nonattainment areas remain in effect. *See* 69 Fed. Reg. 23951, 23972-23974 (April 30, 2004); *see also South Coast Air Quality Management District v. U.S. E.P.A.*, 472 F.3d 882 (D.C. Cir. 2006).

**2003 State and Federal Strategy for the California State Implementation Plan**

The State of California adopted the 2003 State and Federal Strategy for the California State Implementation Plan (hereafter "2003 State SIP") to attain the 1-hour ozone and PM10 National Ambient Air Quality Standards ("NAAQS"). The California state agency responsible for adoption and submission of the California State Implementation Plan is the California Air Resources Board ("ARB"). On October 23, 2003, ARB adopted the 2003 State SIP. On January 9, 2004, ARB submitted the 2003 State SIP to the EPA for approval. The 2003 State SIP was deemed complete by operation of law on July 9, 2004. EPA failed to take action on the 2003 State SIP by July 9, 2005, which violates EPA's nondiscretionary duty to act pursuant to section 110(k)(2) of the Act, 42 U.S.C. § 7410(k)(2).

**2004 San Joaquin Valley Extreme Ozone Attainment Demonstration Plan**

The San Joaquin Valley Unified Air Pollution Control District adopted the 2004 San Joaquin Valley Extreme Ozone Attainment Demonstration Plan ("2004 Valley SIP") on October 8, 2004. ARB approved the 2004 Valley SIP on October 28, 2004. ARB submitted the 2004 Valley SIP to EPA for approval on November 15, 2004. The 2004 Valley SIP was deemed complete by operation

Messrs. Stephen L. Johnson and Wayne Natri
Notice of Intent to Sue
October 9, 2007

of law on May 15, 2005. On October 20, 2005, the District updated control measure dates in Chapters 3 and 8 of the 2004 Valley SIP to ensure consistency with the District's 2005 Amendments to its 2003 PM10 Attainment Demonstration Plan. EPA failed to take action on the 2004 Valley SIP by May 15, 2006, which violates EPA's nondiscretionary duty to act pursuant to section 110(k)(2) of the Act, 42 U.S.C. § 7410(k)(2).

**2003 Air Quality Management Plan for the South Coast Air Quality Management District**

The South Coast Air Quality Management District adopted the California State Implementation Plan (SIP) for ozone, particulate matter (PM10), carbon monoxide, and nitrogen dioxide in the South Coast Air Basin ("2003 South Coast SIP") on August 1, 2003. The plan was transmitted to ARB on August 7, 2003. ARB approved the 2003 South Coast SIP on October 23, 2003. ARB submitted the plan to EPA on January 9, 2004. The 2003 South Coast SIP was deemed complete by operation of law on July 9, 2004. On November 14, 2005, the EPA approved the plan as it pertained to attainment of the 24-hour and annual NAAQS for PM10 and revisions to SCAQMD rules 403, 403.1, and 1186, which pertained to fugitive dust emissions. 70 Fed. Reg. 69081 (Nov. 14, 2005). EPA failed to take action on the remaining portions of the 2003 South Coast SIP by July 9, 2005, which violates EPA's nondiscretionary duty to act pursuant to section 110(k)(2) of the Act, 42 U.S.C. §7410(k)(2).

**Health Effects of Ozone and Particulate Matter Pollution**

Air pollution kills people and harms breathers' lungs. The Environmental Working Group published the Air Resources Board's estimates that show 1,292 San Joaquin Valley residents die each year from long-term exposure to PM2.5.[1] Ozone and PM pollution exacerbate respiratory conditions, including asthma, increase hospitalizations and emergency room visits, contribute to cardiac illnesses, and increase school and work absenteeism.

A document prepared jointly by the California Air Resources Board and the American Lung Association describes ozone as

> a powerful oxidant that can damage the respiratory tract, causing inflammation
> and irritation, and induces symptoms such as coughing, chest tightness, shortness
> of breath, and worsening of asthma symptoms. Ozone in sufficient doses
> increases the permeability of lung cells, rendering them more susceptible to toxins

---

[1] Renee Sharp and Bill Walker, PARTICLE CIVICS: HOW CLEANER AIR IN CALIFORNIA WILL SAVE LIVES AND SAVE MONEY, Environmental Working Group at 19.

Messrs. Stephen L. Johnson and Wayne Natri
Notice of Intent to Sue
October 9, 2007

and microorganisms. The greatest risk is to those who are more active outdoors during smoggy periods, such as children, athletes, and outdoor workers. Exposure to levels of ozone above the current ambient air quality standard leads to lung inflammation and lung tissue damage, and a reduction in the amount of air inhaled into the lungs. Recent evidence has, for the first time, linked the onset of asthma to exposure of elevated ozone levels in exercising children (McConnell 2002). These levels of ozone also reduce crop and timber yields, damage native plants, and damage materials such as rubber, paints, fabric, and plastics.

The California Air Resources Board and the American Lung Association of California, RECENT RESEARCH FINDINGS: HEALTH EFFECTS OF PARTICULATE MATTER AND OZONE AIR POLLUTION, January 2004 at 2. The document also shows the significant health effects and costs of exposure to fine particulate matter and ozone in California.

The American Lung Association's STATE OF THE AIR: 2007 report ranks Los Angeles-Long Beach-Riverside, Bakersfield, Visalia, and Fresno as the 1st, 2nd, 3rd, and 4th most smog-polluted cities in the nation.[2] The report also ranks Los Angeles-Long Beach-Riverside, Bakersfield, Visalia, and Fresno as the 1st, 3rd, 7th, and 15th most polluted cities in the nation considering long-term exposure to fine particulate matter.[3]

The Air Resources Board reports that from 2001 to 2006, the San Joaquin Valley exceeded the new federal 8-hour ozone (smog) standard on more days than even the South Coast Air Basin (635 days compared to 553 days, respectively).[4] 2005 was the only year that the South Coast had more days of ozone violations. Over the last five years, the ozone monitor in Arvin (Kern County) has recorded more violations of the 8-hour ozone standard than any other monitor in the United States. Given that several parts of California have the most intractable air quality problems in the nation, our local, state and federal agencies must do everything in their capacity to combat this harmful pollution. This includes EPA's compliance with the Act's statutory deadlines to either approve or disapprove California's ozone and PM10 clean-up plans.

---

[2]American Lung Association, STATE OF THE AIR: 2007 at Table 2b.

[3]American Lung Association, STATE OF THE AIR: 2007 at Table 2a.

[4]*See* ARB rankings at www.arb.ca.gov/adam/cgi-bin/db2www/adamtop4b.d2w/start.

Messrs. Stephen L. Johnson and Wayne Natri
Notice of Intent to Sue
October 9, 2007

**Identity of Noticing Parties and their Attorneys**

**Association of Irritated Residents**

Tom Frantz, President
Association of Irritated Residents
30100 Orange Street
Shafter, CA 93263
Telephone: (661) 746-1344

**Attorney for AIR**

Brent Newell
Center on Race, Poverty, and the Environment
47 Kearny Street, Suite 804
San Francisco, CA 94108
Telephone:    (415) 346-4179 x2
Fax:          (415) 346-8723
Email:        bjnewell@igc.org

**Natural Resources Defense Council**

Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
Telephone: 310-434-2300
Attention: David Pettit and
Adrian Martinez

**Attorney for NRDC**

Adriano Martinez
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401
Telephone:    (310) 434-2318
Fax:          (310) 434-2399
Email:        amartinez@nrdc.org

**Conclusion**

At the conclusion of the 60-day period, AIR and NRDC will file suit in U.S. District Court to compel EPA to perform its nondiscretionary duty under the Clean Air Act. If you wish to discuss this matter short of litigation, please direct all future correspondence to Brent Newell and Adriano Martinez.

Sincerely,

Brent Newell
Center on Race, Poverty & the Environment

Messrs. Stephen L. Johnson and Wayne Natri
Notice of Intent to Sue
October 9, 2007


*Brent Newell for*

Adrian Martinez
NRDC


cc:    Governor Arnold Schwarzenegger (By Certified Mail, Return Receipt Requested)
State Capitol Building
Sacramento, CA 95814

Mary Nichols, Chair (By Certified Mail, Return Receipt Requested)
California Air Resources Board
P.O. Box 2815
Sacramento, CA 95812

Tom Cackette, Acting Executive Officer (By Certified Mail, Return Receipt Requested)
California Air Resources Board
P.O. Box 2815
Sacramento, CA 95812